SMITH, Justice,
for the Court:
The Mississippi State Tax Commission (MSTC) brought this appeal from an adverse decision in the Chancery Court of Newton County. The controversy centers on the definition of “mobile home” for purposes of calculating sales tax. R & W Builders, Inc. also cross appealed.
Miss.Code Ann. § 27-65-17 (Supp.1990) provides that a 3% sales tax shall be charged on the sale of “mobile homes” and 6% on other sales. R & W charged 3% sales taxes on mobile units that were constructed the same as other mobile homes but were to be used for commercial use as offices or businesses. The Tax Commission assessed additional sales taxes of $6,726.82 plus interest for a total of $8,675.28 on the mobile homes sold for commercial use for the years 1985 through 1988.
R & W Custom Builders, Inc. brought suit in the Chancery Court of Newton County seeking a refund pursuant to Miss.Code Ann. § 27-65-47 (Supp.1990). R & W appealed the assessment of additional sales taxes on the sale of mobile units to the Board of Review of the Mississippi State Tax Commission. The Board affirmed the assessment but abated the penalty from the assessment. R & W appealed this decision to the Tax Commission, which affirmed the Review Board. R & W paid the tax and interest and in October, 1989, filed suit in chancery court seeking a refund. The matter was tried on October 25, 1990, and the court entered its opinion. Because R & W conceded the taxa-bility of the portable buildings on skids, the judgment was partially favorable to the Commission, but the net effect was to reverse the decisions of the Board and Commission.
On direct appeal, the Tax Commission argues that residence was required for a “mobile home” as that term was used in Miss. Code Ann. § 27-65-17. By cross-appeal, R & W argues that statements made by an auditor of the Tax Commission to one of the owners of R & W concerning the tax rate under § 27-65-17 were admissible as non-hearsay under Miss.R.Evidence 801(d)(2)(D). R & W also argues that equitable estoppel was applicable because the auditor advised them to charge three percent (3%) on mobile homes used for commercial purposes.
After review this Court finds that the term “mobile home” pertains to the construction of the mobile unit rather than its end use. Consequently, the decision of the lower court will be affirmed. ’

FACTS

R & W started business in 1978 constructing portable buildings on skids. They later started constructing mobile homes to be used as residences. In the years in question, 1985-1988, R & W sold mobile units which were used as storage buildings, office buildings, beauty parlors, modular units for a hospital, and as a vet clinic. The mobile units in question had frames, axles, tongues and wheels, and, in general, had the same construction as a mobile unit used for residential purposes.
An audit conducted by MSTC reclassified sales R & W listed as 3% to 6%, covering the period 1985-1988. The increased liability was based on invoices which indicated, on their face, that the unit was intended for a specific commercial or nonresidential use.
Of the invoices reclassified, R & W concedes that sixteen should be taxed at 6% instead of 3%. George Walker, a partner in R & W, testified that these units did not have frames, axles, tongues and wheels. Walker testified that the reason these were taxed at 3% was a mix-up between him and his wife. Walker testified that the portable buildings were built on wooden skids to slide on the ground whereas mobile homes have a frame, axle, tires and tongue.
Walker testified that he had a conversation with Murrel Talbert, an auditor with MSTC, while Talbert was in the office of Rose Mobile Homes located adjacent to R & W. Tal-bert was auditing the sales tax records of Rose at the time. Walker said he explained to Talbert that the mobile units were to be used as offices and showed him one of the *104 units. Talbert allegedly told Walker that if the units had wheels, a tongue and an axle, it was taxed at 3% rather than 6%. This testimony was objected to as hearsay. The judge heard argument and excluded the testimony.
L.C. Robinson, Director of the Sales and Use Tax Division of the MSTC, testified that there had not been a controversy over the definition of “mobile home” under Miss.Code Ann. 27-65-17 prior to this case. Robinson contended that Rule 6(h), defining mobile home park, gave a definition of mobile home which required occupancy. He did note that the statute did not provide a definition. Robinson was questioned extensively by the court. He testified that it was the intended use of the unit that determined the tax rate and not how it was constructed.

DISCUSSION

DIRECT APPEAL

IS RESIDENCE REQUIRED FOR A “MOBILE HOME,” AS THAT TERM IS USED IN SECTION 27-65-17?
Miss.Code Ann. § 27-65-17 provides as follows:
Upon every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever there is hereby levied, assessed and shall be collected a tax equal to six percent (6%) of the gross proceeds of the retail sales of the business, except as otherwise provided herein.
******
Retail sales of aircraft, automobiles, trucks, truck-tractors, semitrailers and mobile homes shall be taxed at the rate of three percent (3%).
Neither the statute nor any companion statute defines “mobile home.”
Other statutes do define “mobile home,” although in a different context. Miss.Code Ann. § 27-53-1, on ad valorem taxes, provides as follows:
For the purposes of this chapter, the following words shall have the following meanings:
“Mobile home” — any house trailer or trailer-type vehicle designed and constructed so as to be suitable for use for domestic, commercial or industrial purposes when such trailer is detached from a motor vehicle and parked on real estate as opposed to being towed by a self-propelled vehicle on the highways of this state. This definition includes all such trailers which are parked even for a period of only a few months and excludes only those actually in transit on the highways or parked for no more than an over night stop.
Miss.Code Ann. § 75-49-3, the definitions for the chapter on “Movable Homes,” states the following:
Unless clearly indicated otherwise by the context, the following words when used in this chapter, for the purpose of this chapter, shall have the meanings respectively ascribed to them in this section:
(a) “Mobile home” shall mean a structure, transportable in one or more sections, which, in the traveling mode, is eight (8) body feet or more in width, or forty (40) body feet or more in length, or when erected on site, is three hundred twenty (320) or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes any plumbing, heating, air conditioning and electrical systems contained therein; except that such term shall include any structure which meets all the requirements and with respect to which the manufacturer voluntarily files a certification required by the commissioner and complies with the standards established under this chapter.
While these statutes are applicable to their respective sections only, they are nevertheless indications of definitions the legislature has given to “mobile home.”
The Commission contends that its Rule 6(h) of the Sales Tax Rules, promulgated in 1975, gives a definition. The rule provides, in part:
*105 A “mobile home park” is a park established for the primary purpose of accommodating mobile homes which are permanently located, hooked up to water, sewer, gas, or electric utilities with permanent meter connections, tied down according to regulations and other requirements which are not easily disconnected. It is a home and place of permanent residence. It therefore appears that the statute which specifically denotes “hotels, motels, tourist courts, or camps, and trailer parks” refers specially to travel or transient accommodations and not to residences of mobile homes.
The obvious problem is that the term defined is “mobile home park,” not “mobile home.” This rule is an interpretation of Miss.Code Ann. § 27-65-23, a different statute from that in question. Had the Commission defined “mobile home” within its rules and applicable to § 27-65-17, that definition could have been considered by the Court.
The lower court looked to the dictionary in determining the “common usage” of the term “mobile home.” The court used Webster’s Seventh New Collegiate Dictionary (1967). Under the entry “mobile home” there was a cross reference to the main entry “trailer,” definition 3b. Definition 3b is as follows:
b: a highway vehicle designed to serve wherever parked as a dwelling or as a place of business, (emphasis added by lower court).
The Commission naturally disputes this definition and cites several other dictionaries, which either do not define “mobile home” or give a definition which includes residence as a component of the definition.
In Lambert v. Ogden, 423 So.2d 1319, 1321 (Miss.1982), this Court in a tax case stated that “[w]here a popular word is used in a statute with no statutory definition, we follow the well established rule that popular words in a statute must be accepted in their popular sense, and the Court must attempt to glean from the statute the legislative intent.” The Court was considering whether, under § 27-65-17, the word “truck” included the attached equipment for purposes of the sales tax. The Court first looked to see if there were any statutes defining “truck” and then looked to Webster’s Third New International Dictionary in seeking a “popular sense” of the word.
In Lambert, this Court was also asked to look at a rule of the Commission. Noting that the Commission’s interpretation of the statute “would generally be entitled to weight in determining legislative intent,” the Court noted that “such administrative interpretations lose their value when they conflict or are materially at variance with the statute in question.” 423 So.2d at 1322. In this ease, Rule 6(h) provides no guidance in the definition of “mobile home” nor is it of any other value.
This Court holds that a “mobile home” is determined by method of construction and not end use. It is how it is made and not how it is used that determines the applicable sales tax rate. The terms “movable home” and “mobile building” are synonymous with “mobile home.” They are all mobile units designed and constructed with frames, axles, tongues, and wheels suitable as highway vehicles or when parked as residences or as commercial businesses. Particularly persuasive that R & W is correct is that the legislature, under another taxing scheme, has defined “mobile home” to include commercial use.
Easily noted is one striking similarity among all the described tangible personal property exceptions under § 27-65-17. All six exceptions listed are mobile or movable personal property. Each one’s intended use could never be suggested as residential purposes only. There would be undoubtedly some difficulty living in an airplane, automobile, truck, truck-tractor, or a semi-trailer. Without a specific legislative definition attached, it defies logic for the Tax Commission to place an exception on the mobile home that its use rather than its initial construction determines the taxation rate.
Because the Court affirms on the direct appeal it is not necessary to address the merits of the cross appeal.

CONCLUSION

Because the Commission has not come forward with any substantial support in its rules *106 or in statute which supports its interpretation of what is a “mobile home,” this Court affirms the decision of the lower court that “mobile home” can be taxed at 8% based on the common meaning of the words. There is support for this position in the definition of the term in statutory language elsewhere and in the dictionary.
DIRECT APPEAL IS AFFIRMED. CROSS APPEAL DISMISSED AS MOOT.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., not participating.